G. Thomas Martin, III (SBN 218456)
Nicholas J. Bontrager (SBN 252114)
**MARTIN & BONTRAGER, APC**
6464 W. Sunset Blvd., Suite 960
Los Angeles, CA 90028
Telephone: (323) 940-1700
Fax: (323) 238-8095
tom@mblawapc.com
nick@mblawapc.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

WENDI KNAAK, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

vs.

BARCLAYS BANK,

Defendant.

Case No.: 2:17-cv-4537

**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**

**CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE § 1785.1, ET SEQ.**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound

extensions of credit to consumers. The Legislature has further determined that here is a need to ensure that debt collectors exercise her responsibility with fairness, honesty and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.

2. Here exists today in California a pervasive and fundamental misunderstanding about the long-term impact filing a consumer bankruptcy has on a consumer's credit worthiness. Specifically, many consumers believe that because a bankruptcy can be reported on their credit report for ten years their credit worthiness will be ruined for the same length of time. This is not true.

3. The majority of consumer debtors who actually file consumer bankruptcy do so to raise their credit score and remedy their poor credit worthiness.

4. It is entirely possible for consumer debtors to have over a 700 FICO Score within as little as 12 months after filing a consumer bankruptcy (Chapter 7 or Chapter 13).

5. Creditors and lending institutions are aware of the misconception that filing a consumer bankruptcy destroys a consumer's credit worthiness for ten years.

6. In an effort to perpetuate the aforementioned bankruptcy myth, creditors intentionally and routinely ignore credit reporting industry standards for accurately reporting bankruptcies and debts included in those bankruptcies in an effort to keep consumers' credit scores low and their interest rates high.

7. Creditors know that by deviating from recognized credit reporting standards consumers will have difficulty raising their credit scores and improving their credit worthiness.

8. Plaintiff WENDI KNAAK ("Plaintiff"), individually and on behalf of all others similarly situated, through her attorneys, brings her Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies on behalf of himself and on behalf of all others similarly situated (the "Class" or "Class Members"), resulting from the illegal actions of Defendant BARCLAYS BANK ("Defendant" or "Barclays"), in willfully and systematically reporting negative and inaccurate information on

consumers' credit reports that Defendant knew or should have known was erroneous and which caused Plaintiff and the Class damages.

9. Plaintiff makes these allegations on information and belief, with the exception of allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

10. While many violations are described below with specificity, her Complaint alleges violations of the statutes cited in their entirety.

11. Any violations by Barclays were knowing and intentional, and Barclays did not maintain procedures reasonably adapted to avoid any such violation.

12. Unless otherwise indicated, the use of Barclays in her Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Barclays.

13. Unless otherwise stated, all the conduct engaged in by Barclays occurred in California.

## VENUE AND JURISDICTION

14. Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff, a resident of the State of California, seeks relief on behalf of a California class, which will result in at least one class member belonging to a different state than that of Defendant, a company with its principal place of business in Delaware. Plaintiff also seeks statutory damages of $5,000.00 per willful violation, which, when aggregated among a proposed class number in the tens of thousands, exceeds the $5,000,000.00 threshold for federal court jurisdiction. Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and the Court has jurisdiction.

15. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as the events described in her complaint took place within this district.

## PARTIES

16. Plaintiff, Wendi Knaak, is a natural person who resides in the City of Los Angeles, California. Plaintiff is a "consumer" as defined by the California Consumer Credit Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code § 1785.3(b).

17. Defendant is a corporation engaged in the business of collecting debts in her state and in several other states, with its principal place of business located in Delaware. The principal purpose of Defendant is the collection of debts in her state and Defendant regularly attempts to collect debts alleged to be due another. Defendant Barclays is and was, at all relevant times stated herein, an entity which engaged in the practice of furnishing consumer information to consumer reporting agencies, and is therefore a "furnisher of information" as contemplated by Cal. Civ. Code § 1785.25(a). Defendant Barclays is a "person" as defined by Cal. Civ. Code § 1785.3(j).

18. The causes of action herein pertain to Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(d), in that inaccurate representations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

19. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers.

20. Plaintiff is informed and believes and on that basis alleges that Defendant is responsible for the acts, occurrences and transactions as officers, directors or managing agents of Defendants, or as their agents, servants, employees, and that each of them are legally liable to Plaintiff, as set forth below.

## GENERAL CLASS ACTION ALLEGATIONS

21. Plaintiff is among many thousands of persons in the State of California who have filed bankruptcies pursuant to Chapters 7 and 13 of the U.S. Bankruptcy Code and

who have been granted orders of discharge by a U.S. Bankruptcy Court. Under federal bankruptcy laws, such an order fully and completely discharges all statutorily dischargeable debts incurred prior to the filing of bankruptcies, except for those that have been: (1) reaffirmed by the debtor in a reaffirmation agreement; or (2) successfully challenged as non-dischargeable by one of the creditors in a related adversary proceeding. Plaintiff and the Class Members are persons for whom the debts at issue have been discharged through bankruptcy.

22. Defendant is a creditor and debt collector regularly engaged in the business of collecting consumer debts from consumers.

23. In the ordinary course of business, Barclays issues reports to credit reporting agencies as to the current status of debts incurred by individuals to whom Barclays has extended credit. It is also an entity which regularly and, in the ordinary course of business, furnishes information to one of more credit reporting agencies about its transactions and experiences with consumers.

24. Barclays has knowledge of when it's past due debts are discharged because it receives a discharge notice from the U.S. Bankruptcy Court.

25. Despite the fact that Barclays has received notice of the discharge of each Class Member's debt to Barclays, Barclays has a deliberate policy of not notifying credit reporting agencies that debts formerly owing to Barclays are no longer "charged off" or currently still due and owing because they have been discharged in bankruptcy. As a result of Barclays's refusal to make such updates to credit reporting agencies, debts that have been discharged in bankruptcy are instead listed on Class Members' credit reports as "charged off" or "past due" and/or with a balance due and owing. These notations clearly indicate to potential creditors, employers, or other third parties that a Class Member still owes a debt and that debt may be subject to collection. These notations therefore adversely affect a Class Member's ability to obtain credit or employment and have the inherent coercive effect of inducing Class Members to make payment on the debt.

26. Moreover, Barclays' failure and further refusal to update credit report tradelines for many thousands of consumers to reflect that their debts were, in fact, discharged in Bankruptcy, as opposed to reporting a current status of "charged off" and/or "past due" and/or with a balance due and owing, runs afoul of Section 727 of the Bankruptcy Code and the primary purpose of the protection offered by the Bankruptcy Code— the discharge of a debt. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007). 92.

27. Barclays knew that the existence of such inaccurate information in the Class Members' credit reports would damage the Class Members' credit ratings and their ability to obtain new credit, a lease, a mortgage or employment, all of which may be essential to reestablishing their life after going through bankruptcy.

28. Barclays has chosen not to advise the CRAs of the fact that the Class Members' debts have been discharged because Barclays continues to receive payment either directly or indirectly on discharged debts. This results from the fact that Class Members, in order to obtain favorable credit or credit at all, often feel it necessary to pay off the debt despite its discharge in order to remove the inaccurate information from their credit reports.

29. Barclays has adopted a systematic pattern and practice of failing and refusing to update credit information with regard to debts discharged in bankruptcy because it sells those debts and profits by the sale of same. Barclays knows that if the credit information is not updated, then many Class Members will feel compelled to pay off the debt even though it is discharged in bankruptcy. Thus, buyers of Barclays debt know, and are willing to pay more for the fact that, they will be able to collect portions of Barclays debt despite the discharge of that debt in bankruptcy.

30. Upon information and belief, Barclays receives a percentage fee of the proceeds of each debt repaid to Defendant and forwarded to the buyer of Barclays debt. Barclays therefore has a clear economic incentive to violate the CCCRAA.

31. Reporting a debt to a credit bureau is a "powerful tool designed, in part, to wrench compliance with payment terms." *Rivera v. Bank One*, 145 F.R.D. 614, 620 (1993). 104.

32. Barclays' actions constitute a violation of 11 U.S.C. § 524(a)(2), which provides that a discharge in bankruptcy operates as an injunction against the commencement or continuation of an action, the employment or process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor.

33. Accordingly, Barclays violated the CCCRAA by failing to comport its credit reporting with the terms of the Bankruptcy Discharge under §§ 727 and 524(a)(2) of the Bankruptcy Code, which ultimately intentionally assisted in the collection of discharged debt by not correcting the Class Members' credit reports to reflect that the debt has, in fact, been discharged.

34. Barclays' conduct is in bad faith, is vexatious and oppressive and is done with full knowledge that it is in violation of the law.

35. As a result of a major class action settlement, the major national credit reporting agencies have agreed to revise their procedures to report all pre-bankruptcy debts as discharged, unless furnishers provide information showing that a debt was excludable from discharge. *White v. Experian Info Solutions, Inc.*, Case No. CV 05-01070 (C.D. Cal. Aug. 19, 2008) (lead case number).

36. Therefore, even the CRAs have acknowledged that the accurate and proper way to report the status of all pre-bankruptcy debts, like Plaintiff's and Class Members' debts, following successful Bankruptcy discharges of the debt, is "Discharged in Bankruptcy" (or the equivalent).

37. Despite this reform, there continue to be problems with improper reporting of discharged debts, including allegations that creditors have deliberately engaged in the practice to in order to pressure debtors to pay off discharged debts.

38. Defendant's failure to provide updated credit information to the credit reporting agencies that Class Members' past due Barclays debts are no longer "charged off" or "past due" or have a balance that is due and owing because they have been

discharged in bankruptcy is knowing and willful and constitutes violations of the CCCRAA.

39. As a direct consequence of Barclays' grossly inadequate and inaccurate credit reporting, practices and procedures, Plaintiff and the Class have been effectively denied the fresh start to which they are legally entitled under the U.S. Bankruptcy Code.

40. In each case described above, Plaintiff and the Class members' legally protected interests in being able to apply for credit based on accurate information have been violated, placing them at an increased risk of not being able to obtain valuable credit and in many cases adversely affecting their credit ratings. Barclays' publication of false and potentially damaging credit information concerning the Plaintiff and the Class violates their statutorily mandated rights and has caused them particularized and concrete harm.

## ALLEGATIONS AS TO PLAINTIFF'S BANKRUPTCY

41. At all times relevant to her matter, Plaintiff was an individual residing within the State of California.

42. Furthermore, Barclays conducted business within the State of California at all times relevant.

43. On or about October 1, 2015, Plaintiff filed for a no asset Chapter 7 bankruptcy in the United States Bankruptcy Court for the Central District of California in Los Angeles. Plaintiff's case was assigned Case Number 2:15-bk-25188-TD (the "Bankruptcy").

44. The obligations ("Account") to Barclays, which was a consumer credit card account bearing the last four numbers 3670, were scheduled and included in the Bankruptcy.

45. Barclays, a creditor, electronically received notice of the Bankruptcy on or about October 3, 2015.

46. On or about January 11, 2016, Plaintiff received a successful bankruptcy discharge, and Barclays electronically received notice of this Bankruptcy discharge on or about January 13, 2016.

47. Barclays did not file any successful proceedings to declare their Debt "non-dischargeable" pursuant to 11 U.S.C. § 523 et seq.

48. Barclays also did not request or receive relief from the "automatic stay" codified at 11 U.S.C. §362 et seq. while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff for any of the underlying Debts in their pre-bankruptcy form.

49. Accordingly, the Debt to Barclays was discharged through the Bankruptcy.

50. Barclays either reported or caused to be reported inaccurate information after the Bankruptcy was filed and discharged, in the form of reporting the account as "charged off", owing an outstanding balance of $ 5,118.00, and with a past due amount of $ 632.00, as opposed to "Discharged in Bankruptcy" (or the equivalent).

51. The derogatory information reported by Barclays after the Bankruptcy was discharged indicates to potential creditors that the Debt was somehow not discharged in the Bankruptcy and Plaintiff was being actively delinquent in respect to Barclays' Debt, which is inaccurate and materially misleading reporting.

52. Barclays attempt to collect upon their respective Debt by reporting post-Bankruptcy derogatory information on Plaintiff's Credit Reports was therefore inaccurate and prohibited by the Bankruptcy discharge.

53. Barclays' reporting of post-Bankruptcy derogatory information was also inaccurate because a default on an account included in a bankruptcy can occur no later than the bankruptcy filing date, at which point the accounts included in the Bankruptcy were no longer collectable due to the effect of the automatic stay and ultimate discharge.

54. Thus, by reporting post-Bankruptcy derogatory information, Barclays effectively reported: (1) Plaintiff was being financially irresponsible by failing to pay the debt after the Bankruptcy was discharged; and (2) that Plaintiff's Debt was more recently subject to collection than it really was, which is inaccurate and misleading under the CCCRAA.

55. Barclays' reporting of post-Bankruptcy derogatory information was also inaccurate and materially misleading because Barclays continued reporting information

based on Barclays's pre-bankruptcy contract terms with the Plaintiff, which were no longer enforceable upon the filing of the Bankruptcy and ultimate successful discharge, hereby rendering the reported information inaccurate and materially misleading.

56. For decades, courts have recognized that when a bankruptcy discharge is granted, the order relates back to the date of filing the petition and relieves the debtor from personal liability as of that date.

57. This is because when a debtor voluntarily files for bankruptcy, the petition constitutes an "order for relief" under the particular chapter the debtor wishes to proceed per Bankruptcy Code 11 U.S.C. § 301(a)-(b). 136. When a debtor such as Plaintiff files a chapter 7 petition, Section 727(b) of the Bankruptcy Code provides that the discharge, when entered, applies to "all debts that arose before the date of the order for relief." In other words, the discharge relieves the debtor of personal liability for all prepetition debts.

58. Thus, in relation to the CCCRAA, the discharge order rendered the information reported by Barclays following the bankruptcy discharge inaccurate and patently misleading because the discharge order relieved Plaintiff from any personal obligation to pay Barclays as of the date of filing the Bankruptcy petition—October 1, 2015.

59. Moreover, the derogatory, delinquent information furnished by Barclays following the Bankruptcy Discharge was inaccurate and misleading because end users, including potential creditors, may interpret the reported information to mean that Plaintiff incurred new debt during the Bankruptcy or that Plaintiff reaffirmed the Debt with Barclays notwithstanding the discharge.

60. However, Plaintiff did not incur new debt with Barclays during the pendency of the Bankruptcy or reaffirm the Debt in the Bankruptcy.

61. As a direct and proximate result of result of Barclays' willful and untrue communications, Plaintiff and the Class have suffered actual damages including, but not limited to, reviewing credit reports, attorney's fees, and such further expenses in an amount to be determined at trial.

62.     As a further direct and proximate result of Barclays' acts stated herein, Plaintiff and the Class incurred pain and suffering, was impeded in seeking necessary products and services from vendors, suffered humiliation, embarrassment, anxiety, loss of sleep, emotional distress, and defamation of character.

63.     In an Equifax Credit Report dated May 23, 2017, Barclays reported the following inaccurate, derogatory information for the above-referenced Account:

- Balance: $ 5,118.00
- Debt-to-Credit Ratio:  54%
- Outstanding Balance:  $ 632.00
- Scheduled Payment Amount:  $ 4,484.00

64.     Here was also no notation, status update, or any other indication in Barclays' tradeline pertaining to the Account, as it was reported to Equifax, that the Account was discharged in Plaintiff's Bankruptcy or even subject to bankruptcy.

65.     Plaintiff's Barclays Account was included and discharged in Plaintiff's Chapter 7 Bankruptcy (filed on October 1, 2015 and discharged on January 11, 2016).

66.     Defendant's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

67.     Defendant received notice of the Bankruptcy filing, which listed Barclays as a creditor for the Accounts, on or about October 3, 2015 through electronic notice delivered by the Bankruptcy Noticing Center.

68.     Defendant also received notice of the Bankruptcy discharge on or about January 13, 2016 through electronic notice delivered by the Bankruptcy Noticing Center.

69.     Rather than using the publicly available Bankruptcy information that Barclays knew or should have known existed, Barclays chose to continue reporting inaccurately on Plaintiff's credit report.

70.     It was inaccurate and materially misleading to report that Plaintiff owed an outstanding balance of $ 5,118.00 because the true and correct statuses of the Accounts was "Discharged in Bankruptcy" as of January 11, 2016.

71. Here was also no notation, status update, or any other indication in Barclays's tradeline as it was reported to Equifax that the Account was discharged in Plaintiff's Bankruptcy.

72. Again, the Account in question was not subject to a reaffirmation agreement with Barclays or a successful adversary proceeding brought by Barclays, but rather it was successfully discharged through Plaintiff's Bankruptcy. Therefore, in all material respects, Plaintiff's reporting of an outstanding balance and the failure to notate the Account trade-line as discharged or included in bankruptcy is an example of an incorrect status notation on her credit report that is suffered by all the Class Members.

73. Barclays knowingly and willfully failing to update Plaintiff's Equifax Credit Reports to signify that the Account had been discharged in bankruptcy, and in so doing, Barclays was noncompliant with 11 U.S.C. §§ 524(a)(2) and 727 of the Bankruptcy Code by failing to update and correct credit information to CRAs to show that the Accounts were no longer legally due and owing. Barclays had knowledge that the Account was discharged because it received a discharge notice from the Bankruptcy Noticing Center. It therefore, had, and has, a duty under the Sections 524(a)(2) and 727 of the Bankruptcy Code to promptly notify CRAs of any updates and/or corrections to the information previously provided to such agencies and/or any additional information that is necessary to make the information provided by Barclays to the CRAs complete and accurate. Barclays's inaccurate and negative reporting of the Accounts in light of its knowledge of the Bankruptcy discharge was willful.

74. Through her conduct, Defendant has violated Cal. Civ. Code § 1785.25(a) by furnishing information to Equifax that Barclays knew or should have known was inaccurate.

**CLASS ACTION ALLEGATIONS**

75. Plaintiff brings her action on behalf of herself and on behalf of all others similarly situated (the "Class").

76. Plaintiff seeks to maintain her action as a class action representing a class consisting of the following:

> All individuals who, on or after June 20, 2015, have had a consumer report relating to them prepared by any of the credit reporting agencies in which one or more of their Barclays tradeline accounts or debts was not reported as discharged despite the fact that such debts had been discharged as a result of their bankruptcy under Chapter 7 and Chapter 13 of the Bankruptcy Code.

77.     Her suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related hereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

78.     Ascertainability / Numerosity:  Her class is ascertainable in that it is comprised of individuals who can be identified by reference to purely objective criteria contained in the records of Barclays and the various credit reporting agencies.  Barclays and its employees or agents are excluded from the Class.  Plaintiff does not know the number of members in the Class, but believes the Class members number in the hundreds or thousands, if not more.  Thus, her matter should be certified as a Class action to assist in the expeditious litigation of her matter.

79.     Typicality:  The claims of the named Plaintiff are typical of the claims of each member of the Class they seek to represent because: (1) they all had debts owed to Barclays that were discharged in a Chapter 7 or 13 bankruptcy; (2) they have all been injured by Barclays's inaccurate credit reporting despite the fact that the debts have been discharged in bankruptcy; and (3) each of their claims is based upon the same legal theories, i.e. that Barclays violated the CCCRAA.

80.     Adequacy of Representation:  Plaintiff is an adequate representative of the Class he seeks to represent because: (a) he is willing and able to represent the proposed class and has every incentive to pursue her action to a successful conclusion; (b) her interest is not in any way antagonistic to those of the other Class Members; and (c) he is

represented by counsel experienced in litigating significant consumer issues, including the issues specifically raised in her action.

81. Commonality: Here are several questions of law and fact common to all members of the Class. The primary question of law and fact that is common to all members of the class is whether Barclays, in failing to update and correct the credit reports of Class Members, has acted knowingly and willfully in violation of the CCCRAA.

82. A class action is a superior method for the fair and efficient adjudication of her controversy. Class-wide damages are essential to induce Barclays to comply with California law. The interest of Class members in individually controlling the prosecution of separate claims against Barclays is small because the maximum statutory damages in an individual action for the alleged violations are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

83. Barclays has acted on grounds generally applicable to the Class, hereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## CAUSE OF ACTION
## VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT CAL. CIV. CODE § 1785.1 ET SEQ.
### (Against Barclays)

84. Plaintiff incorporates by reference all of the above paragraphs of her Complaint as though fully stated herein.

85. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

86. In the regular course of its business operations, Barclays routinely furnished information to credit reporting agencies pertaining to transactions between Barclays and Barclays's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

87. Because Barclays is a partnership, corporation, association, or other entity, and is therefore a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), Barclays is and always were obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if they knew or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a). Barclays knew or should have known that Plaintiff's debt was discharged. Thus, Barclays violated Cal. Civ. Code § 1785.25(a).

## PRAYER FOR RELIEF

88. WHEREFORE, Plaintiff and The Class Members pray for judgment as follows:

- Certifying the Class as requested herein;
- Providing such further relief as may be just and proper;
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A);
- An award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d);
- An award of punitive damages pursuant to Cal. Civ. Code § 1785.31(a)(2)(A);
- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b);
- That the Court preliminarily and permanently enjoin Defendant from engaging in the unlawful credit reporting practices stated herein.

Dated: June 20, 2017                Respectfully submitted,

**MARTIN & BONTRAGER, APC**

/s/  G. Thomas Martin, III

G. Thomas Martin, III

## TRIAL BY JURY

89. Pursuant to FED. R. CIV. P. 38, Plaintiff hereby demands a trial by jury on all issues so triable.